# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**  :

     **v.**  :  **CRIMINAL NO. 89-234**

**MYRNA SUREN**  :


# ORDER

AND NOW, this        day of        , 2014, upon consideration of the Motion to Set Aside, Vacate Sentence Pursuant to 28 U.S.C. § 2255, and the government's response to that motion, it is hereby

# ORDERED

that the motion is denied as time-barred, for the reasons stated in the government's response.

BY THE COURT:

_____
The Honorable Juan R. Sanchez
United States District Judge

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA  :

    v.                  :  **CRIMINAL NO. 89-234**

MYRNA SUREN         :

## GOVERNMENT'S RESPONSE TO MOTION TO SET ASIDE, VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

Myrna Suren filed a 2255 motion a remarkable 17 years after the deadline passed for such a pleading. This action is impermissible, and the motion must be dismissed as untimely. For purposes of completeness, the government also addresses the substance of her new claims, and explains that they are entirely without merit in any event.

### I.    Background

Suren was a leader of a substantial drug trafficking organization in North Philadelphia known as the Grey Tape Organization. The extensive operation was initiated by her son, Luis Anthony "Sexo" Ortiz. At its peak, the organization sold one kilogram of cocaine a day in street sales of individual packets, employing dozens of "hustlers" who sold on the street, "caseworkers" who delivered to the hustlers, "baggers" who packaged the cocaine, enforcers, and bookkeepers. After

Ortiz was murdered in 1988 at the age of 20, Suren took charge.  The Third

Circuit recounted:

> While her son was running the GTO, Suren functioned initially as the banker and treasurer.  As the organization grew, she became manager of the day-to-day activities.  She supervised much of the GTO's finances, accounted for the money received from the caseworkers, monitored the cocaine inventory and reconciled the money turned in for the amount of cocaine sent out.  She ordered additional supplies when necessary and kept some of the records.  She had daily contact with the caseworkers, bookkeepers and delivery boys, and frequently dealt with the suppliers.
>
> Suren took over complete control of the organization after her son's death in September 1988.  In November 1988 she asked her son Moses to resume a management position within the organization.  She later rented out the rights to sell cocaine on the corner located at North Marshall and Shiller Streets to a juvenile for $2,000 a week.  The Marshall Street area is within 1,000 feet of St. Veronica School.

*United States v. Suren*, No. 90-1766, slip op. at 7-8 (3d Cir. 1991).

On June 14, 1989, Suren was indicted on multiple drug trafficking counts,

in connection with her involvement and leadership role in the Grey Tape

Organization.  She proceeded to trial on a superseding indictment, and on June 5,

1990, was convicted of multiple charges, including conspiracy, in violation of 21

U.S.C. § 846, and operating a continuing criminal enterprise, in violation of 21

U.S.C. § 848.

On September 25, 1990, the Court imposed a sentence of life imprisonment

on the conspiracy and CCE counts, plus additional 20- and 40-year terms on the

remaining charges of conviction.  Suren appealed.  On June 3, 1991, the Third

Circuit affirmed the conviction and sentence, except that it directed that the

Court vacate one of the two life sentences and impose a general life sentence on the conspiracy and CCE charges.  The Court of Appeals rejected Suren's challenge to the sufficiency of the evidence, finding "overwhelming" evidence that Suren supervised or managed as many as 30 people within the organization.  *Id.* at 8-9.  The Court also denied Suren's claim that the life sentence amounted to cruel and unusual punishment.  Commenting on the severity of the crimes, it stated:  "She employed juveniles in a drug business.  She sold cocaine and encouraged others to sell cocaine within 1,000 feet of a school.  She effectively seized an area of the city to sell massive quantities of cocaine, virtually transforming the community into a cocaine supermarket, and encouraged youths, including her own sons and daughter-in-law, to participate in the drug trade."  *Id.* at 11.

On September 25, 1991, this Court complied with the Third Circuit's directive, imposing a general sentence of life imprisonment on the conspiracy and CCE counts, and leaving the other sentences intact.  Suren did not petition for certiorari, and her conviction and sentence were final.

Under the Antiterrorism and Effective Death Penalty Act of 1996, a one-year statute of limitations applies in a petition for relief under 28 U.S.C. § 2255.  In *Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998), the Court held that a federal prisoner whose conviction became final prior to enactment of the Act was afforded a one-year grace period, until April 23, 1997, to file a 2255 motion.

Suren did not file her motion until April 23, 2014, missing the deadline by exactly 17 years.

In the meantime, on March 5, 1997, prior to the expiration of the grace period, Suren filed a motion for the appointment of counsel to assist her with a 2255 motion. On June 9, 1997 (after the 2255 deadline actually expired), the Court granted the motion and appointed attorney Guillermo Bosch. On April 7, 1999, Bosch reported to the Court that he could not identify any issue of merit, and moved to withdraw. The Court granted that motion the next day. Suren immediately, on April 14, 1999, filed another pro se motion for appointment of counsel. On April 22, 1999, the Court appointed attorney Jeremy Gonzalez Ibrahim.

Ibrahim did not file any pleading. Seven years later, on February 23, 2006, Suren filed a pro se motion for the appointment of new counsel. The Court took no action on this motion. Another seven years later, on November 26, 2013, Suren filed another pro se motion for appointment of new counsel. On January 28, 2014, the Court granted this motion and appointed Suren's current counsel. This counsel filed the habeas petition on April 23, 2014.

## II.    The Motion is Untimely

Suren asserts that she is entitled to equitable tolling of the one-year deadline, but that is not correct, as she exercised no reasonable diligence

- 4 -

whatsoever in pursuing the matter, nor has she presented any extraordinary circumstances justifying equitable tolling.

The burden on a party invoking equitable tolling is heavy.  "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

The equitable tolling doctrine may be invoked "only sparingly" and not for "a garden variety claim of excusable neglect."  *United States v. Midgeley*, 142 F.3d 174, 179 (3d Cir. 1998) (*quoting Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  Application of equitable tolling "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes."  *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

Suren offers three grounds for equitable tolling.  None present extraordinary circumstances justifying her delay, and even if one did, her actions fail any conceivable definition of diligence.

### A.   Suren Did Not Face Extraordinary Circumstances Justifying a 17-Year Delay

#### 1.   Attorney assistance

Suren first claims that she "had two previous post appellate attorneys who have egregiously failed her," as "[b]oth of her post appellate attorneys were not competent in their representation of her post conviction interests."  Motion 3-4.

This position fails for a simple reason:  A habeas petitioner has no right to counsel at all.  Thus, in *Lawrence v. Florida*, 549 U.S. 327 (2007), the Court rejected a claim of equitable tolling based on an attorney's mistake in calculating the filing deadline for a habeas petition.  "Attorney miscalculation," the Court held, "is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." *Id.* at 336-37.

*Lawrence* relied in part on *Coleman v. Thompson*, 501 U.S. 722 (1991).  In *Coleman*, the Court addressed whether attorney error provided cause for a procedural default based on a late filing.  The Court declared that because "[t]here is no constitutional right to an attorney in state post-conviction proceedings . . . a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."  *Id.* at 752.  In such circumstances, the Court stated, there was "'no inequity in requiring him to bear the risk of attorney error that results in a procedural default.'" *Id.* (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

The Supreme Court has drawn a distinction "between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client."  *Maples v. Thomas,* 132 S. Ct. 912, 923 (2012).

An example of the latter situation was presented in *Holland v. Florida,* 560 U.S. 631 (2010).  There, the petitioner persistently badgered his court-appointed

attorney to file a timely federal petition, but his attorney never did the necessary research (although Holland told him the applicable rules) and did not communicate at all with his client. The petition was ultimately filed five weeks late, and the Supreme Court held that equitable tolling may be warranted. *Id.* at 652. In a concurring opinion (later embraced by the Court in *Maples v. Thomas*), Justice Alito explained that, while a defendant is ordinarily responsible for his attorney's neglect, "Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." *Id.* at 659 (*quoted in Maples v. Thomas,* 132 S. Ct. at 923).[1]

Suren's situation does not qualify as extraordinary. She presents no claim of any attorney misconduct, let alone abandonment, that led her to miss the April 23, 1997, deadline. In contrast to the petitioner in *Holland*, whose claim of attorney abandonment focused on his court-appointed attorney's failure to file a timely petition despite being implored to do so, Suren was not represented by counsel at all at the time the deadline passed. Notably, she had no right to

---

[1] In *Maples v. Thomas,* the Court held that attorney abandonment provided cause for the failure to file a timely appeal in state court, where the inmate's counsel of record, to whom notice had been sent of the state ruling triggering the time to appeal, had actually left their firm earlier without providing any notice to the inmate or to the state court. Nothing comparable happened in the present case.

counsel at that time, and thus cannot claim ineffective assistance of counsel as an extraordinary circumstance warranting equitable tolling.

Further, even with respect to later years, Suren has not set forth any facts showing attorney abandonment or even misconduct.  Essentially, her complaint is only that the attorneys did not identify any issue to present to the Court, but as will be seen, she herself fails even now to present any cognizable claim.  None of this amounts to an extraordinary circumstance justifying a 17-year delay.

Attorney Guillermo Bosch was not appointed to represent Suren until after the deadline passed.  And even then, by all appearances, he did his job, reviewing the case and ultimately informing the Court that he did not identify any issues worth presenting.[2]  Suren also cannot identify anything extraordinary about the conduct of the second appointed attorney, Jeremy Gonzalez Ibrahim, given that, by the time he was appointed in 1999, the deadline had already passed two years earlier.

In short, this is a routine matter in which a pro se prisoner, given a full one year to file a motion after the enactment of AEDPA (on top of the five years she already had after her conviction became final and before AEDPA was passed), filed nothing.  Suren had no right to counsel at the time, and, unlike in *Holland*,

---

[2] The wisdom of his conclusion is reflected in the fact, discussed later, that current counsel has also failed to specify any issue even of arguable merit.

had no attorney blocking her way.  She thus cannot present the lack of attorney

assistance as an extraordinary circumstance warranting equitable tolling.[3]

### 2.    Literacy

Suren next observes that she "was born in Puerto Rico where she only

attended school until the third grade, leaving her illiterate in Spanish her only

language and unable to speak English.  Because of this lack of education and

---

[3] Suren's effort to put some blame on the Court is also unavailing.  *See* Motion 5 ("The remainder of the time that this case has been idling appears to be a clerical issue as the case was not transferred to this Court for years after this second appointment of counsel.").  After 1997, this Court had no obligation to do anything.  In part, there was no reason for the case to be transferred to any judge, as no matter over which the Court had jurisdiction was pending.

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012), is also not applicable.  *Martinez* addresses the intricacies of federal habeas review of state court convictions.  Under longstanding rules, a federal court will ordinarily deny relief on a claim to a state prisoner who committed "procedural default" by failing to raise the claim in state court as required by state law.   qThis principle is "designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Id.* at 1316.  One exception arises where the defendant shows cause for the default, and resulting prejudice.  *Trevino v. Thaler*, 133 S. Ct. 1911, 1917-18 (2013).

In *Martinez*, the Court held that where a state requires any claim of ineffective assistance of trial counsel to be presented on collateral attack, and the claim was not presented due to ineffectiveness of habeas counsel, that ineffectiveness may provide the cause for the procedural default, allowing the petitioner to present the trial claim in a federal habeas proceeding.  This decision is inapplicable to federal petitioners, to whom the procedural default question is irrelevant.  *See, e.g., Perez v. United States,* 2014 WL 31326, *7 (S.D. Fla. 2014) ("*Martinez* concerns procedural default based on ineffective assistance of habeas counsel in a state habeas proceeding, and thus is inapplicable to federal convictions and has no effect on the untimeliness of Movant's § 2255 motion.").  Instead, the issue here is properly addressed under the rubric of equitable tolling, as Suren recognizes.

language gap she was unable to be of any assistance in her own defense throughout the judicial process both before and after conviction." Motion 5.

This as well does not present an extraordinary circumstance justifying a 17-year delay. Thousands of inmates in American prisons are fluent only in Spanish, and are illiterate. That fact does not remotely justify taking no steps to pursue one's rights. If Suren was intelligent enough to communicate with others while engaged in the management of a substantial drug trafficking organization, she certainly was intelligent enough to identify the resources necessary for her to present a claim to the Court (as indeed she ultimately did).

In *Pabon v. Mahanoy,* 654 F.3d 385 (3d Cir. 2011), the Court held that "inability to read or understand English, combined with denial of access to translation or legal assistance, can constitute extraordinary circumstances that trigger equitable tolling." *Id.* at 400. The Court added: "we note that the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Id.* at 400-01. Here, Suren posits only an inability to read or understand English. She does not assert any "denial of access to translation or legal assistance." Further, *Pabon* concerned a petitioner who missed a filing deadline by only ten months, and who established that, both before and after the filing deadline, he repeatedly sought help from an attorney and from the prison, going so far as to file an inmate grievance about the lack of

translation assistance before the filing deadline expired.  *Id.* at 402.  Suren presents no such extraordinary circumstance, let alone any impediment remotely justifying a 17-year delay.

### 3.    Mental competence

Finally, Suren suggests that lack of mental competency may be an extraordinary circumstance allowing equitable tolling.  Motion 7.

However, "mental incompetence is not a per se reason to toll a statute of limitations."  *Nara v. Frank,* 264 F.3d 310, 320 (3d Cir. 2001).  "Rather, the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition."  *Id.*  In *Nara*, the Court held that an evidentiary hearing on this point was warranted because the petitioner "presented evidence of ongoing, if not consecutive, periods of mental incompetency."  *Id.*[4]  Here, in contrast, Suren has not presented any evidence at all of any incompetency at any time.  She offers no reports or any other substantiation of her bald claim.

In later suggesting that trial counsel was ineffective in failing to present a claim of mental incompetence (one of Suren's two substantive 2255 claims, which will be addressed later), the only support she offers is that (a) trial counsel stated at the beginning of the trial that he had had difficulty communicating with Suren through an interpreter; (b) counsel advised the court that Suren "has again

---

[4] *Nara v. Frank* concerned a petition that was filed five days late.  For this reason as well, the case is of little relevance here.

indicated to me that she wishes to not have a trial, but at the same time I don't believe that she is either willing, able, or able (sic) to understand the nature of the guilty plea and what would be required by the Government," and (c) counsel stated that he "represented the Defendant throughout the trial of the instant matter without her assistance, aid or confidence."  Motion 12-13.  None of that in any way suggests, let alone establishes, a lack of mental competence, as opposed to a person who at times had a difficult relationship with counsel and struggled with the momentous decision of whether to plead guilty or proceed to trial.

Suren has not presented any support for the claim that mental incompetence was the extraordinary reason justifying a 17-year delay.

### B.    Suren Did Not Exercise Reasonable Diligence

Even if Suren presented an extraordinary impediment she faced that continued for 17 years and prevented a timely 2255 filing (which she has not), equitable tolling must still be denied due to her failure to exercise reasonable diligence.

To our knowledge, no court has ever allowed equitable tolling of a habeas deadline for a period even remotely approaching 17 years.  By this time, the need for finality that underpins the AEDPA statute of limitations is overwhelming.  The government would face insurmountable prejudice, as it is likely impossible to retry a defendant 25 years after the events in question.  Thus, Suren would have had to act with far more alacrity to preserve her rights.

She did not.  After her conviction became final in 1991, she did nothing for more than five years, until March 5, 1997, with the AEDPA-extended deadline little more than a month away, when she sought the appointment of counsel. Next, in April 1999, after the appointed counsel reported that he could not identify any claim to present, she sought new appointed counsel.  She then waited seven years, after the second appointed counsel did not file a claim, to seek a third attorney.  When the Court did not act on that 2006 motion, she waited another seven years before asking again.  By any definition, there was no diligence here whatsoever, which is how we find ourselves in the likely unprecedented situation of addressing a first 2255 motion filed a quarter-century after the prosecution commenced.

*McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), is controlling.  There, the defendant in 2002 obtained affidavits that purportedly established his innocence, but did not file a habeas petition until six years later.  The Supreme Court stated: "Such a delay falls far short of demonstrating the . . . diligence" required to entitle a petitioner to equitable tolling.  *Id*. at 1931.[5]  *See also Schlueter v. Varner*, 384

---

[5]  In *McQuiggin v. Perkins*, the Supreme Court further held that a petitioner's untimely habeas claims may be considered if he makes a showing of "actual innocence."  The Court stated that this avenue is not a species of equitable tolling, but rather provides a "gateway" for a petitioner in order to prevent a miscarriage of justice.  The Court cautioned, however, "that tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond

. . . *continued*

- 13 -

F.3d 69, 76 (3d Cir. 2004) (defendant who waited several years before taking any action to check the status of his case did not act diligently); *Robinson v. Johnson*, 313 F.3d 128, 143 n.6 (3d Cir. 2002) (determining that Robinson was "exceedingly lax" in his adherence to procedural guidelines and not diligent in waiting five years to exhaust his state appeals procedures).

*Holland v. Florida,* 560 U.S. 631 (2010), provides a useful comparison. There, "Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have [attorney] Collins—the central impediment to the pursuit of his legal remedy— removed from his case.  And, the *very day* that Holland discovered that his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court."  *Id.* at 653 (emphasis in original).  In those circumstances, the Supreme Court held that equitable tolling may be warranted to allow a filing that was five weeks late.

In contrast, in *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005), the Court rejected equitable tolling where 21 months passed after the state supreme court's denial of post-conviction review, triggering the time to file a federal claim, as

---

a reasonable doubt.'"  *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (*quoting Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  *See also House v. Bell*, 547 U.S. 518, 538 (2006) (explaining that the *Schlup* standard is "demanding" and rarely met).  Here, Suren does not offer any new evidence or make any claim of actual innocence.

even though the defendant stated he did not receive notice of the state court's action, he made no effort to check on the status.  *See also Ohler v. Lamas,* 542 F. App'x 205, 206 (3d Cir. 2013) (not precedential) (the defendant was not entitled to equitable tolling for untimely habeas petition, even though petitioner asserted his use of prescription medications put him in a "fog," where he waited nearly two years with little or no communication from counsel before contacting the state court about the status of his appeal and waited an additional nine months for a response, all the while doing nothing to protect his interests).  Here, Suren's delay was far longer than the few years at issue in these cases, and mandates that her 2255 motion be summarily dismissed.  Even if she presented an extraordinary basis for the vast delay (which she has not), her complete lack of diligence requires that her request for equitable tolling be denied.

## III.   Suren's Substantive Claims are Meritless

As explained above, this Court should summarily dismiss Suren's 2255 motion because it is untimely.  But for purposes of completeness, we also observe that her 2255 claims are subject to summary dismissal on the merits in any event.

Suren presents two claims:  (1) trial counsel was ineffective in failing to present character evidence at trial and sentencing, and (2) trial counsel was ineffective in failing to address Suren's mental competence.  Both assertions are conclusory and insufficient.

### A.    Character Evidence

Suren suggests that character evidence would have been helpful, but never explains what that testimony would have been or who would have presented it. She only explains who would *not* have been available:  "Undersigned counsel acknowledges that most of Petitioner's children at the time of trial were involved in the case and thus would not have made good witnesses.  However, there is nothing to show that trial counsel attempted to find a neighbor or friend as a character witness."  Motion 12 n.2.

This presentation is insufficient as a matter of law to state a claim.  In order to present a claim of this nature, a defendant must identify the specific witnesses and set forth the specific testimony which counsel, due to inadequate performance, failed to elicit.  "Of course, the fact that counsel was ineffective is not in itself sufficient to grant relief under *Strickland*.  Under *Strickland's* second prong, [the defendant] must establish a reasonable probability – one sufficient to undermine our confidence in the outcome – that the jury's verdict would have been different if not for counsel's errors.  Such a showing may not be based on mere speculation about what the witnesses [the attorney] failed to locate might have said."  *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989) (citation omitted).  When evidence is presented, "we must assess this evidence in relation to the record as a whole, to determine whether there is a reasonable probability that such evidence, if presented to a jury acting 'conscientiously . . . and

impartially,' would have led the jury to have a 'reasonable doubt' respecting [the defendant's] guilt." *Id.* at 713 (citations omitted) (*quoting Strickland v. Washington,* 466 U.S. 668, 695 (1984)). *Accord Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001) (no prejudice where petitioner offered no evidence of what witness would have said). *Compare Marshall v. Hendricks*, 307 F.3d 36, 108 (3d Cir. 2002) (in state capital proceeding, evidentiary hearing was required where defendant alleged that his attorney did not investigate the availability of mitigating evidence, and in the habeas matter "offered a significant quantum of apparently relevant mitigating evidence that was never placed before the jury for consideration").

Suren offers just speculation that trial counsel might have been able to find a character witness. She offers no explanation of what the testimony would have been or how it would have undermined the overwhelming evidence presented against her at trial. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991) (even where a petitioner identified a witness whose testimony his attorney failed to present and a legal theory toward which the witness' testimony would have been directed, summary dismissal was warranted, as the petitioner gave no indication of what the contents of the testimony would have been). This claim should be summarily dismissed even if it were timely presented (which it was not).

### B.    Mental Competence

The same is true of Suren's other substantive claim, that trial counsel was ineffective in failing to address Suren's purported mental incompetency.

This claim is also entirely conclusory.  As noted earlier, Suren cites to only snippets of the record, which do not establish in any way that there was any reason for concern about her competency, in the sense of her ability to understand the nature of the proceedings and assist in her defense.[6]  At most, the citations suggest that counsel at times had difficult in communicating with Suren, and that Suren struggled with the decision whether to plead guilty or proceed to trial.  Those circumstances describe many defendants; they do not show mental incompetence under the law.  Suren offers none of the evidence (such as examination or other third-party reports) that attend findings of incompetence, just conclusory statements.

"[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing."  *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991).  *See also Palmer v. Hendricks,* 592 F.3d 386, 395 (3d Cir. 2010) ("Palmer's petition contains no factual matter regarding *Strickland's* prejudice prong, and

---

[6]  Incompetency for purposes of trial is defined as "a mental disease or defect rendering [the defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).

his reference to the legal theory of self-defense is precisely the sort of unadorned legal conclusion that, without supporting factual allegations, we have consistently found insufficient to warrant an evidentiary hearing.").  Suren presents no factual basis for a claim of incompetency, and thus this claim as well is subject to summary dismissal if not time-barred.[7]

## IV.    Conclusion

For the reasons stated above, Suren's 2255 motion should be summarily dismissed as time-barred.

Respectfully yours,

ZANE DAVID MEMEGER
United States Attorney

/s Robert A. Zauzmer
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

/s Robert K. Reed
ROBERT K. REED
Executive Assistant United States Attorney

---

[7]  Indeed, the impossibility of discerning Suren's competency at the time of trial in 1990 (24 years ago) only illustrates the consequence of Suren's wholesale lack of diligence in presenting her claims, and why the entire motion is time-barred.

# CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

> Carina Laguzzi, Esq.
> Laguzzi Law PC
> Two Penn Center Plaza, Suite 200
> 1500 JFK Blvd.
> Philadelphia, PA  19102-1754

*/s Robert K. Reed*
ROBERT K. REED
Executive Assistant United States Attorney

Dated:  June 30, 2014.